## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE TROSTLE | : |
| v. | : NO.: |
| RKL WEALTH MANAGEMENT LLC : | **JURY TRIAL DEMANDED** |

### CIVIL ACTION COMPLAINT

Parties

1. Plaintiff, Michelle Trostle, is an adult individual who suffers from bilateral total knee replacement—which is a disability pursuant to the Americans with Disabilities Act (ADA), and she resides at 2 Weiser Court, Womelsdorf, PA 19567.

2. The defendant, RKL Wealth Management LLC, is a limited liability company which has a place of business located at 1330 Broadcasting Road, Wyomissing, PA 19610.

Jurisdiction

3. This Court has jurisdiction over this matter pursuant to the Americans with Disabilities Act of 1990, 42 U.S. Code Chapter 126 (hereinafter "ADA").

4. This lawsuit was filed within 90 days of the plaintiff's receipt of a right to sue letter from the EEOC.

Facts

5. At all times material hereto, defendant employed hundreds of people.

6. Plaintiff commenced employment with defendant's predecessor in about May 2006 as an "Administrative" and, after several subsequent mergers, plaintiff began work for defendant in January 2016 which is located in this District in Wyomissing, PA.

7. Between about December 2013 and December 2016, plaintiff's supervisor was defendant's agent, Laurie Peer.

8. In December 2013, plaintiff was assigned to be an Administrative Assistant for Ms. Peer.

9. Prior to April 2016, Ms. Peer loved the work plaintiff was doing for her.

10. Prior to April 2016, plaintiff would occasionally take lunch with Ms. Peer and even thought of her as a friend.

11. In June 2015, plaintiff first learned that she needed bilateral total knee replacement surgery.

12. Plaintiff informed Ms. Peer about her need for such surgery and she asked plaintiff to wait until the "busy season" of the following year had ended to undergo the surgery.

13. Based upon Ms. Peer's request, plaintiff put off her surgery for ten (10) months.

14. When plaintiff finally scheduled her surgery in April 2016, Ms. Peer complained to plaintiff that it was inconveniently scheduled before Ms. Peer's vacation, which would mean that plaintiff would still be on medical leave during Ms. Peer's vacation.

15. Plaintiff thereafter complained to HR about Ms. Peer's continued reluctance for plaintiff to undergo necessary surgery, and HR directed plaintiff that Ms. Peer could not dissuade her from undergoing surgery.

16. On plaintiff's last day of work before her surgery, April 18, 2016, Ms. Peer did not say good bye or wish plaintiff luck.

17. Accordingly, plaintiff provided more than 30 days' notice that her leave would commence in April 2016.

18. It was clear to plaintiff that Ms. Peer was upset at plaintiff for taking medical leave.

19. On April 19, 2016, plaintiff underwent a bilateral total knee replacement and removal of two (2) cysts and realignment of muscles and tendons in both legs to get rid of bow leggedness.

20. When plaintiff visited the defendant's Wyomissing offices in about May 2016 using a cane, Ms. Peer would not look at plaintiff or acknowledge her.

21. When Ms. Peer and plaintiff crossed paths, Ms. Peer said: "You look good. . . You look like you can come back to work."

22. It was clear that all Ms. Peer did not believe plaintiff was disabled from work and believed plaintiff could return to work.

23. On June 8, 2016, plaintiff underwent a second surgery due to unexpected complications, and this need for a second surgery would result in a delay in plaintiff's recovery.

24. Despite this unexpected second operation, plaintiff's surgeon, Steven Longenecker, M.D., still supported plaintiff's return to work on October 19, 2016.

25. On or about the start of August 2016, Ms. Peer said to plaintiff: "I thought you would be back two months ago."

26. At the same time, plaintiff spoke to Tonya from HR and reported how Ms. Peer was complaining about her being out of work, and Tonya responded: "The bottom line is Laurie needs you back to work."

27. Because of Ms. Peer's statements and actions, plaintiff requested that her doctor allow her to try to return to work 2 months earlier than she first recommended-- on or about August 19, 2016.

28. Plaintiff thought that Ms. Peer would be happy and calm down when she saw plaintiff returned to work early.

29. Ms. Peer initially seemed happy, but a week later, she started acting very nasty towards plaintiff, found fault with everything plaintiff did at the workplace, and failed to notify plaintiff of merge changes which occurred while plaintiff was out.

30. For the next 3-1/2 months, Ms. Peer was constantly nasty towards plaintiff and scrutinized every little thing plaintiff did.

31. Unfortunately, plaintiff developed an inflamed bursa sac in August 2016, and had to get it checked out by her doctor.

32. Plaintiff utilized the defendant's flex time policy to attend the said doctor's appointment.

33. When plaintiff returned from the appointment, Ms. Peer ignored plaintiff when she said hello to her.

34. When plaintiff returned to work, she was still taking pain medication and she was using a cane and/or crutches the first few weeks and she periodically had to ice her knees at the workplace while keeping her legs elevated.

35. On December 5, 2016, plaintiff was terminated during a meeting that plaintiff herself had scheduled for her six-month review because it was part of plaintiff's job to schedule her own review.

36. Ms. Peer did not attend the meeting, and Stephenie Etters (Operations Manager) and Tonya from HR informed plaintiff that she was terminated.

37. Ms. Etters told plaintiff that it was not her personality or her job performance, and she went on to state that plaintiff is no longer a fit for the company.

38. The proffered reason for plaintiff's termination was false and was mere pretext to mask defendant's discriminatory animus.

39. The true reason for plaintiff's termination was because she was regarded as being disabled, because she took time off for medical reasons in the recent past, and defendant wrongly perceived that she was unreliable and a liability, and, thus, unable to perform a wide range of jobs.

40. Plaintiff also believes that Ms. Peer never got over plaintiff's complaint to HR made in about April 2016, and she terminated plaintiff in substantial part in retaliation for that complaint.

41. Defendant and its agents acted at all times material hereto with their authority to hire fire and discipline.

42. Defendant's agents acted against plaintiff in a bigoted, willful and malicious manner.

43. Plaintiff was subjected to humiliation, embarrassment, and mental anguish as a consequence of her termination from employment.

## COUNT 1—DISABILITY DISCRIMINATION

44. Plaintiff repeats paragraphs 1-43 as if more fully set forth herein.

45. By and through its conduct, defendant violated ADA by intentionally discriminating against the plaintiff and terminating her employment because of her disability and/or because she was regarded as disabled.

46. Plaintiff seeks lost pay, benefits, compensatory damages for pain and suffering, punitive damages, attorneys' fees and costs.

## COUNT 2–RETALIATION

47. Plaintiff repeats paragraphs 1-46 as if more fully set forth herein.

48. By and through its conduct, defendant violated ADA by intentionally discriminating against the plaintiff and terminating her employment because she complained about Ms. Peer's refusal to accommodate her disability by permitting her to take medical leave (under defendant's policy) to undergo surgery to treat her disability.

49. Plaintiff seeks lost pay, benefits, compensatory damages for pain and suffering, punitive damages, attorneys' fees and costs.

WHEREFORE, plaintiff demands that judgment be entered in her favor against defendant for lost pay, lost benefits, other financial losses, compensatory damages for emotional pain and suffering, punitive damages, attorneys' fees, costs, interest, reinstatement of employment and any other relief that this Honorable Court deems to be fair and proper.

Samuel A. Dion, Esq.
Dion & Goldberger
1845 Walnut Street, Suite 1199
Philadelphia, PA 19103
215-546-6033 (phone)
215-546-6269 (fax)
Samueldion@aol.com
Attorneys for Plaintiff